## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KHALIL HAMMOND,<br>    Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 24-CV-5526 |
| | : | |
| DR. LAUREL R. HARRY, *et al.*,<br>    Defendants. | : | |

### MEMORANDUM

**GOLDBERG, J.**                                                                                                       January 31, 2025

Khalil Hammond, a prisoner in custody at SCI Phoenix, filed this action naming as Defendants the current and former Secretaries of the Pennsylvania Department of Corrections ("DOC"),[1] other DOC employees, Governor Joshua Shapiro, and the Pennsylvania General Assembly. All Defendants are named in their individual and official capacities.

Hammond asserts that his constitutional rights were violated in two distinct ways, first by a DOC policy concerning the celebration of Muslim religious holidays, which also is the basis of a statutory claim under the Religious Land Use and Institutional Persons Act ("RLUIPA"), and second because the DOC earns interest on funds he holds in his institutional account without crediting that interest to him. Hammond also seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Hammond leave to proceed *in forma pauperis* and dismiss the claims in part.

---

[1] Hammond identifies Dr. Laurel R. Harry, the current DOC Secretary, as well as George Little who previously held that post. While Hammond identifies John Wetzel in the body of his Complaint as another former Secretary, he did not list him in the caption of the Complaint. He also makes no factual allegations about how Wetzel was involved in the actions he describes. Accordingly, the Court does not understand Hammond to be asserting any claims against Wetzel.

I.      **FACTUAL ALLEGATIONS**[2]

Hammond alleges that he is a practicing Muslim since birth and closely follows the precepts of his faith. (Compl. at 3-4.) Two of the most important celebrations of his faith are Eid al-Fitr and Eid al-Adha, both of which happen after a period of fast and end with prayer and a ceremonial meal involving certain foods. (Id. at 4.) He alleges that as of January 1, 2023, as authorized by Defendant Little, the DOC changed a policy about the allowance and facilitation of the "feast" meal at the end of the fast.[3] (Id. at 5.) Hammond claims that Little distributed a memo on February 24, 2022 explaining that the DOC was "transitioning from the formerly allowed feast to 'fellowship meals.'" (Id.; see also id. at 23 (Little Memo dated 2/24/22)). Little wrote to "all inmates" to advise them that:

> Beginning January 1, 2023, faith groups accommodated with Ceremonial Meals will instead be accommodated with up to two (2) Fellowship Meals a year. Fellowship Meals permit inmates of those faith groups to provide input on the mainline "best meal" to be served at two holy day observances per year; however, optional menu items will no longer be available. Additionally, members of each faith group will be able to eat together and afterwards engage in thirty (30) minutes of fellowship, provided communal gatherings are permitted at that time.

(Id. at 23.) Hammond alleges that "a fellowship meal in the PA.D.O.C. is nothing more then [sic] a meal from the regularly scheduled daily menu that inmates of a faith group are allowed to eat together." (Id. at 5.) He asserts that the Little Memo served no reasonable or legitimate penological purpose and fellowship meals "don't conform to Islamic standards of a traditional feast as was followed in the PA.D.O.C. for over half a century." (Id.) Hammond asserts that the

---

[2] Unless otherwise stated, the factual allegations set forth in this Memorandum are taken from Hammond's Complaint. (ECF No. 1). The Court adopts the sequential pagination assigned to the Complaint by the CM/ECF docketing system. When quoting the Complaint, punctuation and capitalization errors are cleaned up.

[3] The Court notes that the Eid al-Fitr for 2023 occurred on April 20-21, 2023, and for 2024 it took place on April 9-10, 2024. The Eid al-Adha for 2023 occurred on June 27-28, 2023, and for 2024 it took place on June 16-17, 2024.

implementation of fellowship meals was "in retaliation for inmates (of prior unrecognized faith groups) asserting their rights to equal treatment in regards to the ceremonial mandates of their religions for feast." (Id.)

Hammond alleges that Pennsylvania's prison system targeted Muslims in the DOC by stripping their right to religious feasts. (See id. at 6.) In contrast, he asserts, Jewish prisoners "never lost access to specially ordered Kosher products daily for their fast and for their feasts." (Id.) Inmates housed in the restricted housing unit did not have access even to fellowship meals due to that status.[4] (Id.) He alleges that Defendants Little, Harry, and Ulli Klem, the DOC employee responsible for religious activities, interfered in the free exercise of religion by interfering in his participation in the two holidays' meals and congregate prayer. (Id. at 6-7.)

On November 15, 2023, Defendant Harry issued an updated memo concerning religious meals, adjusting the procedures to be followed but not reinstating the prior "authorized feasts."[5] (Id. at 7; see also id. at 25 (Harry Memo dated 11/15/23)). The Harry Memo established a policy of permitting up to two "Religious Meals (formerly called Fellowship Meals)" per year; set forth procedures for groups to request and schedule their Religious Meals; stipulated that no state funds or Inmate General Welfare Fund ("IGWF") monies could be used to subsidize the purchase of specialty food items; provided that general population inmates with sufficient funds could place a group order for one identical inmate-purchased shelf-stable food item from an approved vendor to supplement each Religious Meal; and established rules for conducting Religious Meals that

---

[4] While Hammond alludes to himself as an inmate who has been housed in restricted housing, he does not allege specifically that he was in restricted housing when one of the Muslim holidays occurred and thus personally was unable to attend one of the fellowship meals.

[5] As the Harry Memo was dated November 15, 2023, it would have superseded the Little Memo and applied to the Eid al-Fitr occurring on April 9-10, 2024 and the Eid al-Adha occurring on June 16-17, 2024.

included time to engage in group religious practice after the meal was consumed. (Id. at 25-28.) Hammond contends that the new directives also do not conform to the specifications of a halal feast, infringe upon the free exercise rights of inmates like himself, have no penological purpose, and were intended "to frustrate and deter those wishing to participate in 'feasts' from doing so." (Id. at 7-8.) He cites to provisions in the policy that allegedly require that, in order for an inmate to participate in a religious meal, an inmate must have participated in six-months of religious services prior to the meal and be free of misconducts for a period of six-months.[6] (Id. at 8.) Hammond alleges that "DOC actors" have the ability to decide who can and who cannot participate in Religious Meals since an inmate must be deemed to be "in good standing" to participate.[7] (Id.) Hammond contends that one institution, SCI Albion, must provide religious feasts due to a preliminary injunction issued by a federal court, but that Defendants Harry and Klemm failed to ensure that inmates in other DOC facilities had the same access.[8] (Id. at 8-9.) He alleges the Defendants have also violated RLUIPA. (Id. at 9.)

---

[6] I note that there are no such specific "six-month" provisions stated in the Harry Memo. It states only that inmates may obtain a Religious Meal if "they identify, in the Unit Management System, with the religion being accommodated with a Religious Meal – or who have a religious accommodation stating they can attend the religious activities associated with an accommodated religion." (Compl. at 26 (Harry Memo) at ¶ 13).)

[7] The Harry Memo does not mention "good standing." It provides that inmate participation "may be revoked for any violation of policy relating to Religious Meals, security concerns, etc." (Compl. at 26 (Harry Memo) at ¶ 15).)

[8] Hammond appears to refer to the case of Williams v. Little, No. 23-37, 2023 WL 4144567, at *2 (W.D. Pa. June 23, 2023) (granting preliminary injunction in a case "about Mr. Williams's asserted desire to continue to observe two key religious holidays (Eid al-Fitr and Eid al-Adha) by he and his fellow adherents of the Muslim faith at SCI Albion paying for and acquiring certain foods which he says are essential to his religious observance of those holidays, and then engaging in communal observance of them in celebratory meals").

Hammond separately raises constitutional claims regarding the DOC's failure to credit him with interest on funds he keeps in his inmate trust account. Hammond claims he discovered that his and other inmates' funds are accumulated in the interest-bearing IGWF account maintained by the DOC, and that the DOC uses the interest "to fund inmate programs and activities" rather than credit the interest to the inmate who deposited the funds. (Id. at 9-10.) Since the DOC already receives state and federal funds for these programs, Hammond asserts that keeping the interest is a "misappropriation of funds and conspiracy to commit fraud by PA.D.O.C. actors." (Id. at 10.)

Hammond asserts violations of his First Amendment free exercise rights, First Amendment retaliation, Fourteenth Amendment equal protection and due process violations, and RLUIPA claims against Harry, Little, and Klemm based on the fellowship/religious meals policies. He also asserts Fourth Amendment illegal seizure and Fourteenth Amendment due process claims against Harry, Little, the John/Jane Does, Governor Shapiro, and the Pennsylvania General Assembly; RICO Act claims against Harry, Little, and Klemm; as well as Fourteenth Amendment due process, and state law claims against Harry, Little, and the John/Jane Does based on the failure to credit interest to his inmate account. (Id. at 12-19.) He seeks money damages, a declaration that his rights were violated, an injunction mandating that interest be credited to his account, and an injunction mandating policy revisions with regard to Religious Meals. (Id. at 19-21.)

## II.   STANDARD OF REVIEW

The Court grants Hammond leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotations omitted) (requiring the Court to determine whether

5

the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" Shorter v. United States, 12 F.4th 366, 374 (3d Cir. 2021) (quoting Perez v. Fenoglio, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. Iqbal, 556 U.S. at 678. As Hammond is proceeding *pro se*, the Court construes his allegations liberally. See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021).

## III.   DISCUSSION

### A.   Official Capacity Claims for Money Damages

The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. See A.W. v. Jersey City Public Schs., 341 F.3d 234, 238 (3d Cir. 2003). Suits against state officials acting in their official capacities are really suits against the Commonwealth, and as such, are also barred by the Eleventh Amendment. Id. at 238. Additionally, the Third Circuit has held that, where a claim is filed against state officials who were not directly involved in the activities that caused the alleged constitutional violation, but are instead named as defendants because of their positions in state government, they are deemed to be sued in their official capacities and thus entitled to Eleventh Amendment immunity. Downey v. Pa. Dep't of Corr., 968 F.3d 299, 310 (3d Cir. 2020). As the Commonwealth has not waived its Eleventh Amendment immunity for lawsuits filed in federal court, it and its departments, as well as their officials sued in their official capacities, are immune from suits filed in federal court. See 42 Pa. Cons. Stat. § 8521-22. For this reason, all official capacity claims for money damages are dismissed with prejudice.

6

B.  **Claims for Declaratory Relief**

Hammond also seeks a declaration that his rights have been violated. Because declaratory relief is unavailable to adjudicate past conduct, Hammond's request for such relief is improper and will be dismissed with prejudice. See Corliss v. O'Brien, 200 F. App'x 80, 84 (3d Cir. 2006) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another.").

C.  **Inmate Account Interest**

Hammond asserts Fourth Amendment illegal seizure and Fourteenth Amendment due process claims against Harry, Little, the John/Jane Does, Governor Shapiro, and the Pennsylvania General Assembly; RICO Act claims against Harry, Little, and Klemm; as well as Fourteenth Amendment due process, and state law claims against Harry, Little, and the John/Jane Does based on the failure to credit interest to his inmate account. Hammond's constitutional claims on this issue are not plausible and will be dismissed with prejudice.

1.  **Constitutional Claims**

    a.  **Due Process**

I must first determine whether the alleged deprivation impacts a protected interest in the property at issue. See Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).

Inmates have a protected interest in the principal they deposit into an inmate trust account. See Hale v. Beard, 168 F. App'x 532, 534 (3d Cir. 2006) (citing Higgins v. Beyer, 293 F.3d 683, 693 (3d Cir. 2002)). However, most courts also agree that inmates do not have a protected property interest in the *interest earned* on the money deposited, absent a property right created in a state statute. See Young v. Wall, 642 F.3d 49, 53-54 (1st Cir. 2011) (finding no statutory basis for and rejecting a common-law property right to interest on deposits); Givens v. Alabama Dep't. of Corr.,

7

381 F.3d 1064, 1069 (11th Cir. 2004) ("Alabama inmates do not have a common law property right to the interest that accrues on their accounts" and Alabama "created no such property interest" in statutory law.); Washlefske v. Winston, 234 F.3d 179, 196, (4th Cir. 2000) (holding that a prisoner has no protected property interest in interest earned on his inmate account); Billups v. Wilkinson, 107 F.3d 870 (6th Cir. 1997) ("[C]omplaint was properly dismissed [where no] property interest [was] created by Ohio law, which does not require that prisoners be paid interest on their accounts.").

The United States Court of Appeals for the Third Circuit has not addressed the issue, but the Eastern District of Pennsylvania has. In Smith v. Robinson, this Court concluded that "the courts have yet to recognize a well-settled right, under any aspect of the due process clause, to earn interest on moneys received while incarcerated." 456 F. Supp. 449, 454 (E.D. Pa. 1978).

Because the weight of case law holds that no common law right to interest exists and, accordingly, any due process right must be based on a property interest created in state law, the Court next looks to whether there is such a statutory right in Pennsylvania.

As Hammond recognizes, several statutes govern DOC inmate accounts. First, 61 Pa. Cons. Stat. § 3124 provides:

> (a) Duty to maintain.--The department shall maintain an account of the labor performed by all inmates under sentence in the institution.
> (b) Contents of accounts.--In the account, the department shall credit the inmate with wages for the time the inmate is actually engaged in work. The rate of the wage and the amount credited to each inmate shall be determined at the discretion of the department.

Next, section 3125 provides:

> (a) Payment on discharge.--All sums credited to an inmate shall be for the benefit of the inmate and paid to the inmate on the inmate's discharge.
> (b) Use for present needs.--An inmate who has sums to the inmate's credit may, subject to the rules and regulations of the department, draw upon the balance of the wages for present needs.

61 Pa. Cons. Stat. § 3125. The other statutory section Hammond cites, 61 Pa. Cons. Stat. § 5904, is inapposite. Indeed, none of these statutes, nor any other provision in Title 61 provide a statutory right to receive interest on funds held on deposit in inmate trust accounts. Because there is no statutory basis upon which to recognize a property right to receive interest on prisoner trust fund deposits, Hammond's constitutional claims are not plausible. Moreover, even if a property right did exist, post-deprivation remedies exist in the form of a state tort action or the use of the prison grievance procedure to vindicate that right. See Monroe v. Beard, 536 F.3d 198, 210 (3d Cir. 2008) (holding even if a state actor intentionally or negligently deprives an inmate of inmate funds, "that deprivation does not result in a violation of the Fourteenth Amendment so long as a meaningful post deprivation remedy for the loss is available"). Accordingly, the due process claim is dismissed with prejudice.

        **b.**        **Fourth Amendment Seizure**

Hammond also asserts that the failure to pay him interest constitutes a seizure of property under the Fourth Amendment. This claim is also not plausible. Generally, the Fourth Amendment does not apply in a prison context. See Hudson v. Palmer, 468 U.S. 517, 530 (1984) ("[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells.").

A prisoner has no Fourth Amendment right in the principal held in his prison financial account, let alone a right to interest on the principal. See Jackson v. SCI-Camp Hill, No. 11-1135, 2012 WL 3990888, at *5 (M.D. Pa. Sept. 11, 2012), aff'd, 530 F. App'x 150 (3d Cir. 2013). Seizure of funds from an inmate's account does not violate the Fourth Amendment. See id. at *6 (holding that a prisoner has no Fourth Amendment rights in his prison financial account). Accordingly, the Fourth Amendment claims are dismissed with prejudice.

9

2.   **RICO Claims**

To make out a RICO claim, a plaintiff must adequately set forth the following: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Sedima, S.P.R.L., v. Imrex Co., Inc., 473 U.S. 479, 496 (1985) (citing 18 U.S.C. § 1962). Additionally, a plaintiff must allege plausibly that he has been injured in his business or property as a result of the alleged racketeering activity. Id. A "pattern" of racketeering activity requires at least two predicate acts of racketeering. See 18 U.S.C. § 1961(5); Sedima, S.P.R.L., 473 U.S. at 496 n.14. Section 1961 provides an exclusive list of those acts that can constitute racketeering activity for the purposes of pleading violation of RICO, including such things as any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, and fraud. See Annulli v. Panikkar, 200 F.3d 189, 199 (3d Cir. 1999).

Hammond's RICO claim fails to allege plausibly any of the four elements of the claim, or that he has been injured in his business or property – nor could he allege this last element plausibly since he has no statutory property right to the interest payments that form the basis of the claim. Accordingly, the RICO claim is also dismissed with prejudice.

3.   **State Law Claims**

Finally, Hammond asserts state law claims against Harry, Little, and the John/Jane Does based on the failure to credit interest to his inmate account. He alleges only that the Defendants conspired to defraud him. (Compl. at 10-11.) To the extent he seeks money damages, his official capacity claims are likewise barred by the Eleventh Amendment. See Fake v. City of Philadelphia, 704 F. App'x 214, 216 (3d Cir. 2017) (affirming district court's dismissal of fraud claim on the basis of Eleventh Amendment immunity).

The individual capacity fraud claims cannot proceed as pled. The elements of common law fraud in Pennsylvania are: (1) a misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result. Boehm v. Riversource Life Ins. Co., 117 A.3d 308, 324 (Pa. Super. Ct. 2015). Under Rule 9(b)'s heightened pleading standard, "the complaint must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity." City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc., 70 F.4th 668, 680 (3d Cir. 2023) (citing Fed. R. Civ. P. 9(b)). Hammond's mere invocation of the word "fraud" is insufficient to meet this standard.

D.      **Free Exercise Claims**

Hammond's First Amendment free exercise claims are rooted in changes in DOC policy regarding the provision of religious-centered meals.[9] He asserts that the February 24, 2022 Little Memo changed formerly allowed "ceremonial meals" to twice per year "fellowship meals" on holy day observances that allegedly did not conform to Islamic standards of a traditional post-fast feast "as was followed in the PA.D.O.C. for over half a century." (Compl at 23.) This change was allegedly "in retaliation for inmates (of prior unrecognized faith groups) asserting their rights to

---

[9] Hammond also asserts a due process claims based on the same facts that underlie his free exercise claims. (Compl. at 15.) "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (internal quotations omitted); Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010) (discussing the "more-specific-provision rule" pursuant to which claims should be analyzed under the standards relevant to the more specific provision of the Constitution under which that claim falls, rather than under the Due Process Clause as a catch all). Accordingly, the due process claims will be dismissed.

equal treatment in regards to the ceremonial mandates of their religions for feast," and stripped established groups of their religious celebrations. (Id.)

The policy embodied in the Little Memo was then changed by the November 15, 2023 Harry Memo that did not reinstate the pre-Little Memo religious observance policy but, as stated, permitted up to two "Religious Meals" per year, set forth procedures for groups to request and schedule their Religious Meals, allowed general population inmates to participate and place a group order for one specific outside food time at their own expense, and provided for time to engage in religious practice after the meal was consumed. (Id. at 25-28.) Hammond contends that the Harry Memo directives, occasioned due to lawsuits about the Little Memo policy, also do not conform to the specifications of a halal feast, infringe upon the free exercise rights of inmates like himself, have no penological purpose, and were intended "to frustrate and deter those wishing to participate in 'feasts' from doing so." (Id. at 7-8.)

The Supreme Court has recognized that the First Amendment guarantees that all prisoners must be afforded reasonable opportunities to exercise their religious freedom. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972). Specific to the prison context, although inmates retain certain protections afforded by the First Amendment, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) (quotations omitted). Only beliefs that are (1) sincerely held, and (2) religious in nature are entitled to constitutional protection. See DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000). If a prisoner-plaintiff alleges plausibly that he has a sincerely held religious belief, he must also allege plausibly that the challenged prison practice or policy that allegedly infringes on his religious belief is not reasonably

related to penological interests under the factors set forth in Turner v. Saffley.[10] DeHart, 227 F.3d at 51 (citing 482 U.S. 78, 89 (1987)).

The accommodation of Islamic religious celebrations and the provision of halal foods in prison facilities has been the subject of prior litigation in the Third Circuit. In Williams v. Morton, the Third Circuit applied the Turner test, affirming the District Court's conclusion that "providing vegetarian meals, rather than Halal meals with meat, is rationally related to the legitimate penological interests in simplified food service, security, and staying within the prison's budget." 343 F.3d 212, 218 (3d Cir. 2003). In doing so, and pertinent to the statutory screening of Hammond's claims, the Court applied the second Turner factor—whether there are alternative means of exercising the right that remain open to prison inmates. It agreed with the district court's conclusion that Muslim prisoners had various ways in which to practice their religion. In addition to the pork-free vegetarian diet, the district court had pointed to weekly congregational Jumu'ah prayer services, the opportunity to study Arabic and to observe Ramadan by providing a special meal enabling Muslims to comply with the holiday's fasting requirement, the opportunity to pray five times during each day, and the chance to observe the five pillars of the Islamic faith. Id. at 219.

---

[10] In Turner, the Supreme Court held that a prison regulation that "impinges on inmates' constitutional rights" is "valid if it is reasonably related to legitimate penological interests." Id., 482 U.S. at 89. A four-part test applies for assessing the overall reasonableness of the regulation: (1) whether the regulation or practice bears a "valid, rational connection" to a legitimate and neutral governmental objective; (2) whether prisoners have alternative ways of exercising the circumscribed right; (3) "[what] impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether alternatives exist that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. Id. at 89-90.

In Williams v. Little, the Court entered a preliminary injunction, finding that the inmate plaintiff demonstrated a likelihood of success on the merits of his RLUIPA claim stemming from policy changes included in the same Little Memo at issue here.[11]  2023 WL 4144567, at *8 ("The Court concludes that since the DOC has mainly alleged administrative and financial burdens associated with allowing Mr. Williams (and others) to celebrate those ceremonial meals as they did in the past, and with optional halal food items paid for by inmates, the financial burden does not appear to be so significant such that the Little Memo is now the 'least restrictive means' for fulfilling the DOC's concerns.").

In reaching that decision, the Williams Court contrasted the asserted financial and administrative burdens expressed by the Commonwealth with DOC policy for providing Jewish inmates with kosher for Passover foods.  Id., 2023 WL 4144567, at *9.  The Court concluded that

---

[11] I note briefly that Hammond also asserts an equal protection violation based on the different treatment allegedly afforded to Muslim inmates at SCI Albion.  (See Compl. at 14-15.)  To establish an equal protection violation, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class."  Mack v. Warden Loretto FCI, 839 F.3d 286 (3d Cir. 2016) (internal citations omitted).  "Persons are 'similarly situated' for purposes of an equal protection claim when 'they are alike in all relevant aspects.'"  Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008) (emphasis omitted).  Additionally, to state a claim for religion-based discrimination, a plaintiff needs to allege specifically that he received different treatment from that received by other "similarly situated inmates."  Faruq v. McCollum, 545 F. App'x 84, 87 (3d Cir. 2013) (citing Williams, 343 F.3d at 212).
    The equal protection claim is not plausible.  First, to the extent Hammond's claims involve disparate religious observance at SCI Albion versus SCI Phoenix, the Williams order, entered on June 23, 2023 first applied to the Eid-al Adha occurring on June 27-28, 2023 and not to any observance occurring before the order was entered.  Thereafter, religious observance was governed by the Harry Memo provisions that superseded the Little Memo.  Hammond does not allege that there were any differences in the various SCIs' observances of Muslim holidays occurring thereafter and covered by the Harry Memo provisions.  Second, to the extent Hammond's equal protection claim is based on the Eid-al Adha observance at SCI Phoenix on June 27-28, 2023, as a matter of law Hammond is not similarly situated to the Muslim prisoners in SCI Albion in all relevant aspects since the Williams court's preliminary injunction order applied only to SCI Albion.  See Williams, 2023 WL 4144567, at *17.  Accordingly, the equal protection claim will be dismissed with prejudice.

Williams demonstrated a substantial likelihood of success on the merits, at least as to his statutory RLUIPA claim, and that the other factors cut substantially in favor of granting the preliminary injunction.[12] Id. at *13.

Hammond's claims are not entirely parallel with the claims at issue in Williams. While that case concerned only the changes wrought by the Little Memo, including the bar on inmates purchasing outside food items, Hammond's allegations focus also on the Harry Memo, which *does* permit outside food items and specifically provides for congregate prayer as part of a Religious Meal. Although I agree that Hammond's Free Exercise claim concerning the period covered by the Little Memo may state a plausible claim at this stage, I find that his Free Exercise claim relating to the period where the Harry Memo superseded the Little Memo does not.

On its face, the policy embodied in the Harry Memo, perhaps in recognition of the Williams Court's criticisms, restored to Muslim DOC inmates the ability to purchase outside specialty food items and observe congregate prayer as part of special meals to celebrate the two Eid holidays. Hammond alleges only in conclusory fashion that the new directives "still do not conform to the specifications of a Halal feast." (Compl. at 7). But this kind of conclusory allegation is insufficient to allege a plausible claim. Iqbal, 556 U.S. at 678.

Hammond also does not address what impact the accommodation of his demand for a "traditional feast" at the end of the Eid al-Fitr and Eid Al-Adha fasts – the nature of which is also not described with any particularity – would have on guards, other inmates, and on the allocation of prison resources. It appears, rather, from the face of Hammond's Complaint and the content of

---

[12] In the same decision the Court went on to adjudicate a motion filed by the Defendants to dismiss Williams's Free Exercise Clause claim based on the Little Memo. Finding that the DOC's arguments were in many ways "fact bound, notwithstanding the limited discovery record" established for the preliminary injunction, the Court declined to conclude as a matter of law that Williams had not "at least" stated a claim for relief. Id., at *16.

the Harry Memo that he attached to it, that prison officials instituted the Harry Memo policy to provide an alternative means for him to celebrate the end of the two fasts. Because the policy affords two religious meals per year, and because Hammond does not allege his sincerely held faith requires more than two yearly post-fast meals, he has failed plausibly to allege how the limitation violates his free exercise rights. DeHart, 227 F.3d at 50-51. Hammond's failure to allege more specifically how the policy contained in the Harry Memo burdened his ability to practice his faith renders implausible this portion of his free exercise claim.

### E.  First Amendment Retaliation Claims

Hammond also asserts First Amendment retaliation claims against Harry, Little, and Klemm contending that the now superseded practice of fellowship meals provided in the Little Memo was "in retaliation for inmates (of prior unrecognized faith groups) asserting their rights to equal treatment in regards to the ceremonial mandates of their religions for feast."[13] (Compl at 5.)

In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" Watson v.

---

[13] Hammond asserts that Defendant Harry "participated" along with Little and Klem in inflicting retaliation upon him (Compl. at 13), but makes no specific allegation about any act Harry took related to the Little Memo. He does not allege how Defendant Harry, who succeeded Little as Secretary of the DOC, was personally involved in any retaliation arising from Little's acts in implementing the first policy change. The lack of alleged personal involvement renders the claim against Harry implausible. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.).

Rozum, 834 F.3d 417, 423 (2016) (quoting McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. See Watson, 834 F.3d at 422.

Hammond's retaliation claim is in part undeveloped and defective. First, he appears to assert that his claim is based in part on "others" engaging in protected activity of filing court cases about these other individuals' inability to assert their free exercise rights. A litigant does not have standing to assert a claim based on a constitutional injury to another. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Because he does not assert that his own free exercise rights were impacted by the Harry Memo – as opposed to those of groups or individual inmates practicing previously unrecognized faiths – this undeveloped retaliation claim will be dismissed. The retaliation claim based on the Little Memo, specifically, that Little's policy change was made in retaliation against Hammond – and other Muslim inmates – for exercising free exercise rights because other groups sought similar opportunities to exercise their rights, and he suffered the adverse action of being "stripped him of religious ceremonial feast," will proceed.

F.  **RLUIPA Claim**

Hammond alleges that Harry, Little, and Klemm violated RLUIPA by interfering in the free exercise of his religion when they implemented a policy that "hindered access to religious ceremonial meals based on a 'good standing' standard and stripped inmates such as himself of religious feast that conform to religious tradition." (Compl. at 17.) "Under RLUIPA, [the plaintiff] bears the 'initial burden' of showing that (1) he has a sincerely held religious belief . . . , and (2) the prison substantially burdened the exercise of his belief. . . ." Watson v. Christo, 837 F. App'x 877, 880 n.6 (3d Cir. 2020) (citing Holt, 574 U.S. at 360-61; 42 U.S.C. § 2000cc-1(a)).

17

Hammond asserts RLUIPA claims against Harry, Little, and Klemm in their individual and official capacities, seeking injunctive relief and monetary damages. (Compl. at 17.) Because RLUIPA does not provide a basis for claims against officials in their individual capacities, see Sharp v. Johnson, 669 F.3d 144, 154 (3d Cir. 2012), and because damages are not available against states or their officials acting in their official capacities under RLUIPA, the individual capacity claims and the request for money damages for violation of RLUIPA must be dismissed with prejudice. See Sossamon v. Texas, 563 U.S. 277, 293 (2011) ("We conclude that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA because no statute expressly and unequivocally includes such a waiver.").

To the extent the RLUIPA claims are asserted against the Defendants in their official capacities and seek injunctive relief, the Court notes that, for purposes of statutory screening of RLUIPA claims, "[t]he feasibility of a religious accommodation usually is a fact-intensive inquiry." See Robinson v. Superintendent Houtzdale SCI, 693 F. App'x 111, 117 (3d Cir. 2017). Also, "RLUIPA is broader than the First Amendment and requires the 'compelling government interest' and 'least restrictive means' test of strict scrutiny," while the "reasonably related to legitimate penological interest" standard applies in the First Amendment context. Id. (citing Cutter v. Wilkerson, 544 U.S. 709, 717 (2005). Hammond's RLUIPA claims for injunctive relief will be served for a responsive pleading against the Defendants in their official capacities.

## IV.     CONCLUSION

The Court will dismiss certain claims brought by Khalil Hammond and permit others to proceed at this time. The following claims are dismissed with prejudice: (1) all official capacity claims for money damages; (2) all claims for declaratory relief; (3) all constitutional claims

18

concerning the failure to pay interest on funds held in Hammond's inmate trust account;[14] (4) all due process and equal protection claims based on religious meals; (5) the RICO claim concerning the failure to pay interest on funds held in Hammond's inmate trust account; and (6) RLUIPA individual capacity claims and the request for money damages.

The following claims are dismissed without prejudice and with leave to amend: (1) the state law claims concerning the failure to pay interest on funds held in Hammond's inmate trust account; (2) First Amendment free exercise claims concerning religious meals governed by the Harry Memo; and (3) First Amendment retaliation claims arising from the implementation of the Harry Memo.

The following claims will proceed to service: (1) First Amendment free exercise claims concerning religious meals governed by the Little Memo; (2) First Amendment retaliation claims arising from the implementation of the Little Memo; (3) all official capacity non-monetary RLUIPA claims.

Hammond will be afforded an opportunity to choose whether to proceed only on the claims that pass statutory screening or file an amended complaint if he is capable of alleging additional facts with regard to the claims that have been dismissed without prejudice. An appropriate Order with additional information about amendment will be entered separately.

                                        **BY THE COURT:**

                                        **MITCHELL S. GOLDBERG, J.**

---

[14] Because Governor Joshua Shapiro and the Pennsylvania General Assembly are only named with regard to the constitutional claims concerning the failure to pay interest, they will be dismissed with prejudice and terminated as Defendants.