# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

KHALIL HAMMOND,                          :
    Plaintiff,                       :
                                     :
    v.                               :    No.  2:24-cv-5526
                                     :
DR. LAUREL R. HARRY, *et al.*,            :
    Defendants.                      :

## MEMORANDUM

**Joseph F. Leeson, Jr.**                                    **July 15, 2026**
**United States District Judge**


In a prior Memorandum and Order, the Court screened the Complaint filed by Khalil Hammond, a prisoner in custody at SCI Phoenix, naming as Defendants the current and former Secretaries of the Pennsylvania Department of Corrections ("DOC"), Dr. Laurel R. Harry and George Little, respectively, and Religious Services Administrator Ulli Klemm ("the Commonwealth Defendants").[1] *See Hammond v. Harry*, No. 24-5526, 2025 WL 360861 (E.D. Pa. Jan. 31, 2025).  The following claims raised by Hammond were permitted to "proceed to service: (1) First Amendment free exercise claims concerning religious meals governed by the Little Memo; (2) First Amendment retaliation claims arising from the implementation of the Little Memo; (3) all official capacity non-monetary [Religious Land Use and Institutional Persons Act ("RLUIPA")] claims."[2] *Id*. at *11.  Hammond did not file an amended complaint.

---

[1]    Hammond also named Governor Joshua Shapiro, and the Pennsylvania General Assembly.  Because Governor Shapiro and the Pennsylvania General Assembly were only named with regard to claims that were dismissed with prejudice, they were terminated as Defendants on January 31, 2025.  *See Hammond*, 2025 WL 360861, at *4; *see also* Jan. 31, 2025 Order, ECF No. 10.

[2]    While the Court granted Hammond leave to file an amended complaint to reassert state law claims that were dismissed without prejudice, as well as several extensions of time to do so,

Currently before the Court is the Commonwealth Defendants' motion to dismiss these claims pursuant to Fed. R. Civ. P. 12, *see* ECF No. 39, to which Hammond has filed a response and brief, *see* ECF Nos. 45 & 46.  For the following reasons, the Court will grant the Motion in part and direct the Commonwealth Defendants to file an answer on the surviving claims.

## I.      FACTUAL ALLEGATIONS[3]

Hammond alleged that he has been a practicing Muslim since birth and closely follows the precepts of his faith.  *See* Compl. 3-4.  Two of the most important celebrations of his faith are Eid al-Fitr and Eid al-Adha, both of which happen after a period of fast and end with prayer and a ceremonial meal involving certain foods.  *See id*. at 4.  He alleged that as of January 1, 2023, as authorized by Defendant Little, the DOC changed a policy about the allowance and facilitation of the "feast" meal at the end of the fast.[4]  *Id*. at 5.  Hammond claimed that Little distributed a memo on February 24, 2022, indicating that, due to the need for equality among the ever-growing number of faith groups, the DOC was "transitioning from the formerly allowed feast to 'fellowship meals.'"  *Id*.; *see also id*. at 23 (Little Memo dated February 24, 2022).  Little wrote to "all inmates" to advise them that:

> Beginning January 1, 2023, faith groups accommodated with Ceremonial Meals will instead be accommodated with up to two (2) Fellowship Meals a year.  Fellowship Meals permit inmates of those faith groups to provide input on the mainline "best meal" to be served at two holy day observances per year; however,

---

*see* ECF Nos. 10, 15, 25, 30, 32, he eventually filed a notice indicating that he sought to proceed only on the claims the Court determined to be plausible. *See* ECF No. 34.

[3]      Unless otherwise stated, the factual allegations set forth in this Memorandum are taken from Hammond's Complaint, *see* ECF No. 1, and limited to those concerning the remaining claims in this case.  The Court adopts the sequential pagination assigned to the Complaint by the CM/ECF docketing system.  When quoting the Complaint, punctuation and capitalization errors are cleaned up.

[4]      The Eid al-Fitr for 2023 occurred on April 20-21, 2023, and for 2024 it took place on April 9-10, 2024.  The Eid al-Adha for 2023 occurred on June 27-28, 2023, and for 2024 it took place on June 16-17, 2024.  These are the holidays that occurred while the policy contained in the Little Memo was in effect.

optional menu items will no longer be available.  Additionally, members of each faith group will be able to eat together and afterwards engage in thirty (30) minutes of fellowship, provided communal gatherings are permitted at that time.

*Id*. at 23.  According to the Little Memo, the "ever-growing number of faith groups accommodated within the Department" necessitated the "change in policy" so the Department could "continue to strive for equity among those faith groups."  *Id.*

Hammond alleged that "[t]here is nothing special about a 'fellowship meal' or ceremonial, as a fellowship meal in the [DOC] is nothing more th[a]n a meal from the regularly scheduled daily menu[] that inmates of a faith group are allowed to eat together."  *Id*. at 5.  He asserted that the Little Memo served "no reasonable or legitimate penological purpose" and fellowship meals under the Little Memo did not "conform to Islamic standards of a traditional feast as was prior followed in the [DOC] for over half a century."  *Id*.  Hammond asserted that the implementation of fellowship meals was "in retaliation for inmates (of prior unrecognized faith groups) asserting their rights to equal treatment in regards to the ceremonial mandates of their religions for feast."  *Id*.

Hammond speculated that a "disdain" for Islam and its followers in American society "is perpetuated within Pennsylvania's prison system[,]" and the stripping of prisoners' participation in Islam's religious feasts under the Little Memo "was meant to covertly target Muslims in the [DOC] vindictively[,] knowing what significance the feast has to Muslims particularly[] with followings of other faith groups just being 'collateral damage.'"  *Id*. at 6.  In contrast, he asserted that Jewish prisoners "never lost access to specially ordered Kosher products daily for their fast and for their feasts."  *Id*.  He alleged that Defendants Little, Harry, and Klemm, the DOC employee responsible for religious activities, implemented an "unconstitutional interference in the free exercise of religion for punitive purposes" by interfering in his participation in the two holidays' meals and congregate prayer.  *Id*. at 6-7.

The policy stated in the Little Memo was superseded on November 15, 2023, by Defendant Harry in a Memo ("the Harry Memo") adjusting the procedures to be followed, but that did not "reinstat[e] the prior authorized feasts." [5]  *Id*. at 7; *see also id*. at 25-28 (Harry Memo dated November 15, 2023).  In the prior decision, the Court determined "that Hammond's [f]ree [e]xercise claim concerning the period covered by the Little Memo" stated a plausible claim, but "his [f]ree [e]xercise claim relating to the period where the Harry Memo superseded the Little Memo [did] not." *Hammond*, 2025 WL 360861, at *9.  The First Amendment retaliation claim based on the implementation of the Little Memo, specifically that Little's policy change was made in retaliation against Hammond–and other Muslim inmates–for exercising religious rights because other groups sought similar opportunities to exercise their rights. was also permitted to proceed.  *See id.* at *9-10.  Finally, Hammond's RLUIPA claim for injunctive relief, asserting the Defendants "stripped inmates such as himself of religious feast that conform to religious tradition," was permitted to proceed because "[t]he feasibility of a religious accommodation [under RLUIPA] usually is a fact-intensive inquiry."  *Id*. at *10 (quotations and citation omitted).

In their Memorandum accompanying their Motion, the Commonwealth Defendants argue that the request for injunctive relief under RLUIPA is moot since the policy established by the Little Memo was changed in March 2025 by a DOC policy providing for two religious meals for qualifying faith groups, including Muslims.  *See* Def. Mem. 5-6, ECF No. 39-2.  They argue that the request for money damages for violation of the First Amendment should be dismissed because, since Hammond failed to allege any physical injury, he can only be awarded nominal

---

[5]     As the Harry Memo was dated November 15, 2023, it would have superseded the Little Memo and applied to the Eid al-Fitr occurring on April 9-10, 2024, the Eid al-Adha occurring on June 16-17, 2024, and subsequent holidays.

damages. *See id*. at 8. They argue that Hammond fails to state a free exercise claim because the United States Supreme Court has recognized that prison officials are entitled to deference in the management of prisons and the Little Memo was reasonably related to legitimate penological interests, *see id*. at 9-12, and, even if their actions violated Hammond's free exercise rights, they are entitled to qualified immunity. *See id*. at 12-13. Further, they argue that the First Amendment retaliation claim fails to state a claim because at no point in his Complaint does Hammond assert that he, as opposed to other inmates, "engaged in constitutionally protected conduct that resulted in" the implementation of the Little Memo.[6] *Id*. at 14-15.

Hammond's response brief fails to adequately address these arguments. He includes only a generic recital of the standard for adjudicating the motion, the standard of liberally construing *pro se* pleadings, and a blanket statement that he asserted enough factual matter to make his claims plausible. *See* Resp. 4, ECF No. 46. He also asks that he be permitted the opportunity to amend if the Court concludes that any claim is not plausible as alleged. *See id*.

## II.  STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). In deciding a motion to

---

[6]   The Commonwealth Defendants also argue that Hammond's state law claims for fraud (Count IX), deceit (Count X), and conspiracy (Count XI), each premised on Hammond's allegations concerning the DOC's failure to credit interest to his inmate funds, must be dismissed because they are barred by sovereign immunity. *See* Def. Mem. 16-17. In the prior Memorandum, the Court held that the individual capacity state law claims based on the failure to credit interest were not plausible and dismissed the claims but allowed Hammond an opportunity to attempt to amend them. *See Hammond*, 2025 WL 360861, at *6. In the accompanying Order, Hammond was advised that he must include all of his claims in an amended complaint or the claims would be waived. *See* Jan. 31, 2025 Order 3. He was further warned that if he failed to file any amended complaint, as eventually happened, the Court would direct service of his initial Complaint for the plausible claims to proceed on "Defendants Harry, Little, and Klemm only." *Id*. at 4. Since the state law claims are no longer in the case, the Motion on this point is denied as moot.

dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendant's burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented") (citation omitted). In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted). To determine whether a complaint filed by a *pro* se litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197

(3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (noting that *pro se* filings are construed liberally).

Furthermore, the Court must dismiss the Complaint if it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")  The Court's continuing obligation to assure its jurisdiction includes an assessment of whether a claim has become moot or if the plaintiff lacks standing to bring their claim.  *See Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 252 (3d Cir. 2017) ("Our continuing obligation to assure that we have jurisdiction requires that we raise issues of standing and mootness sua sponte.") (internal quotation and citation omitted); *see also Boley v. Universal Health Servs., Inc.,* 36 F.4th 124, 130 (3d Cir. 2022) (same).

## III.    DISCUSSION

### A.    The RLUIPA Claim is Moot

A case or a claim is moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Lara v. Comm'r Pa. State Police*, 125 F.4th 428, 445-446 (3d Cir. 2025) (quoting *United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers,* 842 F.3d 210, 207-08 (3d Cir. 2016)); *see also Keitel v. Mazurkiewicz*, 729 F.3d 278, 280 (3d Cir. 2013) ("'Courts enforce the case-or-controversy requirement through several justiciability doctrines,' which 'include standing, ripeness, mootness, . . . and the prohibition on advisory opinions.'" (quoting *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009))).  "The central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief."  *Rendell v. Rumsfeld*, 484 F.3d 236, 240 (3d Cir. 2007) (quoting *In re Surrick*, 338 F.3d 224, 230 (3d Cir. 2003)).

The Commonwealth Defendants argue that the RLUIPA claim for injunctive relief is moot since, with the implementation of the new policy on providing two religious meals, the restriction created by the fellowship meals policy of the Little Memo no longer applies.  As a result of the policy change, they contend that the DOC has voluntarily ceased the challenged practice, and its repudiation is entitled to a presumption of good faith that the Commonwealth Defendants will not return to the old policy.  *See* Def. Mem. 6-7 (citing *Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (holding that "[a] defendant's voluntary cessation of a challenged practice will moot a case only if the defendant can show that the practice cannot reasonably be expected to recur")); *see also Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 243 (2024) ("[O]ften a case will become moot even when a defendant vehemently insists on the propriety of the conduct that precipitated the lawsuit.  What matters is not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct.") (internal quotations and citation omitted).  Also, the Commonwealth Defendants argue that, with the religious meals policy change, there is no intention of returning to the Little Memo policy now or in the future, given that the DOC has settled two other related federal cases challenging the Little Memo policy and is implementing a revised policy on religious meals.  *See* Def. Mem. 6-7 (citing *Williams v. Little*, No. 23-37, ECF No. 172-1 (W.D. Pa. May 20, 2025) (settlement agreement) and *Reid v. Little*, No. 23-4205, ECF No. 63 (E.D. Pa. Nov. 26, 2024) (order dismissing case based on reported settlement), ECF No. 65 (E.D. Pa. Feb. 28, 2025) (Joint Praecipe to Settle, Discontinue and End)).  They note also that two other cases challenging the policy of the Harry Memo have now been dismissed as moot.  *See* Def. Mem. 8 n. 3 (citing *Ali v. Harry*, No. 24-1072, ECF No. 35 (M.D. Pa. July 30, 2025) (dismissing the plaintiff's requests for injunctive relief as moot), ECF No. 37 (M.D. Pa. Sept. 2, 2025) (Joint

Stipulation of Dismissal) and *Miller v. Little*, No. 24-4179, ECF No. 20 at 3 (E.D. Pa. Mar. 31, 2025) (dismissing the plaintiff's request for injunctive relief as moot), ECF No. 25 (E.D. Pa. June 3, 2025) (Joint Stipulation of Dismissal)).

The Court agrees that the RLUIPA claim is moot since the Little Memo fellowship meals policy is no longer in force, having been superseded by the new religious meals policy. *See Harris v. Thompson*, No. 24-347, 2025 WL 607014, at *1 (W.D. Pa. Feb. 25, 2025) ("A claim for injunctive relief becomes moot when the underlying issue has been resolved or circumstances have changed such that there is no longer a need for the court to provide a remedy.") (quoting *Daly v. Pa. Dep't of Corr.*, No. 20-23, 2024 WL 4480103, at *9 (W.D. Pa. Aug. 7, 2024), *report and recommendation adopted*, No. 20-23, 2024 WL 4284680 (W.D. Pa. Sept. 25, 2024)).

### B.       Compensatory Damages

Hammond seeks compensatory as well as punitive damages against each Defendant for their violation of his constitutional rights. *See* Compl. 19-20. Defendants argue that Hammond cannot obtain compensatory damages because he does not claim any actual physical injuries as a result of the alleged First Amendment violations and, accordingly, compensatory damages are barred by the Prison Litigation Reform Act ("PLRA"). *See* Def. Mem. 8.

The PLRA requires a prisoner to "demonstrate physical injury before he can recover [compensatory damages] for mental or emotional injury." *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003) (citing 42 U.S.C. § 1997e(e)). The Act "provides that '[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).'" *Marrow v. Pennsylvania*, No. 18-0931, 2018 WL 4963982, at *4 (M.D. Pa. Oct. 15, 2018) (quoting 42 U.S.C. § 1997e(e)).

To recover for mental or emotional injury suffered while in custody, a prisoner bringing a § 1983 action must demonstrate "a less-than-significant-but-more-than-*de minimis* physical injury as a predicate to allegations of emotional injury." *Mitchell*, 318 F.3d at 536 (citing 42 U.S.C. § 1997e(e)). Section 1997e(e)'s physical injury requirement does not affect a prisoner's ability to seek nominal or punitive damages for violations of his constitutional rights because "[c]laims seeking nominal or punitive damages are typically not 'for' mental or emotional injury but rather 'to vindicate constitutional rights' or 'to deter or punish egregious violations of constitutional rights,' respectively." *Mitchell*, 318 F.3d at 533 (citing *Allah v. Al–Hafeez,* 226 F.3d 247, 252 (3d Cir. 2000)).

Since Hammond has not alleged that he suffered even *de minimis* physical injuries, he may obtain nominal or punitive damages, but not compensatory damages on his First Amendment claims. *See Allah*, 226 F.3d at 250 (holding that § 1997e(e) barred inmate from obtaining compensatory damages "for the harm he suffered as a result of defendants' alleged violation of his First Amendment right to free exercise of religion").

**C.    Free Exercise Claim and Qualified Immunity**

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231 (citation omitted). "[Q]ualified immunity provides ample protection to all but the plainly incompetent or

those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244).

A qualified immunity determination involves a "two-step sequence": (1) whether a constitutional or federal right has been violated, and (2) whether that right was "clearly established." *Pearson*, 556 U.S. at 232. These steps may be considered in either order. *See id*. at 236. A right is clearly established for purposes of the qualified immunity analysis if established precedent from the United States Supreme Court or United States Court of Appeals for the Third Circuit "would have put government officials on fair notice that their conduct violated the plaintiff's rights" at the time of the alleged violation. *Montemuro v, Jim Thorpe Area Sch. Dist.*, 99 F.4th 639, 645 (3d Cir. 2024). Qualified immunity is an affirmative defense that must be pleaded and proved by the defendant-official asserting it. *See Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014).

The Commonwealth Defendants make arguments on both elements of the analysis. They assert that Hammond's free exercise claim is not plausible and, even if it were, they enjoy qualified immunity because the unconstitutionality of the Little Memo fellowship meal policy was not clearly established. The Court previously reviewed Supreme Court and Third Circuit Free Exercise Clause jurisprudence, as well as the preliminary injunction decision in *Williams v. Little*, No. 23-37, 2023 WL 4144567, at *9, *16 (W.D. Pa. June 23, 2023), determining on statutory screening that Hammond's claims with regard to the Eid holidays occurring while the Little Memo fellowship meal policy was in effect were plausible. *See Hammond*, 2025 WL 360861, at *9 ("I agree that Hammond's Free Exercise claim concerning the period covered by

the Little Memo may state a plausible claim at this stage[.]"). The Court finds no cause in the Commonwealth Defendants' arguments to revisit that determination.

For the impropriety of whether inmates' free exercise rights may be accommodated with fellowship meals rather than religious meals to be "clearly established," it "must be so apparent that 'every reasonable official would understand that what he is doing is unlawful.'" *HIRA Educ. Servs. N. Am. v. Augustine*, 991 F.3d 180, 190 (3d Cir. 2021) (quoting *James v. N.J. State Police*, 957 F.3d 165, 169 (3d Cir. 2020)). Furthermore, "the right must be defined with a 'high "degree of specificity"' before [courts] consider that right clearly established." *HIRA Educ. Servs.*, 991 F.3d at 190-91 (quoting *D.C. v. Wesby*, 583 U.S. 48, 63-64 (2018)). Thus, "the legal principle established in a precedential case must 'clearly prohibit the offic[ial's] conduct in the particular circumstances before him.'" *HIRA Educ. Servs.*, 991 F.3d at 191 (quoting *Wesby*, 583 U.S. at 63). "[A] case directly on point [is not required], but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations omitted).

The Third Circuit has noted that "the imperative to decide qualified immunity issues early in the litigation is in tension with the reality that factual disputes often need to be resolved before determining whether the defendant's conduct violated a clearly established constitutional right." *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002). Resolving the question of immunity may be a fact-intensive inquiry that requires "a careful examination of the record[,]" including "a detailed factual analysis of the actions of each individual defendant." *Grant v. City of Pittsburgh*, 98 F.3d 116, 122 (3d Cir. 1996). In many instances, the standard of review for a Rule 12(b)(6) motion disfavors granting qualified immunity. *See Fogle v. Sokol*, 957 F.3d 148, 162 n.14 (3d Cir. 2020) ("Courts should be mindful that where the allegations in a complaint do

not require a more definite statement, immunity defenses will often require the benefit of discovery." (citation omitted)); *Gruenke v. Seip*, 225 F.3d 290, 299-300 (3d Cir. 2000) (explaining that summary judgment is the appropriate stage to evaluate qualified immunity). Thus, "'qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint.'" *Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)).

The Court declines to grant the Commonwealth Defendants qualified immunity at this stage of the case. While they assert that other courts, particularly the United States District Court for the Western District of Pennsylvania in *Williams v. Little* determined that the absence of a decisional consensus on whether a Muslim prisoner or detainee has a right to the halal diet of their choice for a religious holiday indicates that the right is not clearly established, *see* Def. Mem. 13, that decision was made on summary judgment after factual discovery. *See* No. 23-37, ECF No. 137 (W.D. Pa. July 26, 2024) (slip op.). Here, the Court has no developed factual record to consider, and the qualified immunity question is not established on the face of Hammond's Complaint.

### D.  First Amendment Retaliation Claim

To state a plausible First Amendment retaliation claim, "a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (internal quotation marks omitted) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *see also Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). On statutory screening of the Complaint,

the Court determined that Hammond's First Amendment retaliation claim, based on the allegation that the Little Memo's policy change, constituted retaliation against him in the form of being denied participation in his religiously mandated ceremonial meals because other groups had sought similar opportunities. *See Hammond*, 2025 WL 360861, at *10. Thus, the Court permitted the claim to proceed. *See id.* The Court dismissed the First Amendment retaliation claim related to the Harry Memo as "undeveloped and defective" because Hammond "appear[ed] to assert his claim based in part on 'others' engaging in protected activity," rather than his own protected activity. *Id*.

The Commonwealth Defendants argue that the balance of the claim should now be dismissed because they read Hammond's allegations about the Little Memo as also claiming retaliation based on constitutional injuries suffered by other inmates, rather than his own protected conduct. They argue that, at no point in the Complaint, does Hammond assert that he himself engaged in constitutionally protected conduct that resulted in the Little Memo's policy change and that he has not alleged causation. *See* Def. Mem. 15 (citing Compl. ¶¶ 24, 67). This reading is too narrow.

Read liberally, Hammond asserts that: (1) his participation in the religious meals to celebrate the Eid holidays was protected conduct; (2) the Little Memo policy change adversely impacted his ability to exercise his faith; and (3) his own conduct – along with his fellow Muslim inmates – of exercising his faith through religious communal meals under the pre-Little Memo policy was a substantial or motivating factor in the implementation of the policy change because the DOC desired not to grant similar observances to other groups. These arguments are sufficient at the pleadings stage to allege a plausible retaliation claim based on the Little Memo's changing ceremonial religious meals to fellowship meals. *See White v. Napoleon*, 897 F.2d 103,

111-12 (3d Cir. 1990) ("Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under section 1983."); *Mack v. Yost*, 427 F. App'x 70, 73 (3d Cir. 2011) (holding that inmate stated a plausible free exercise-based retaliation claim by alleging mistreatment on the basis of his religion); *Roberts v. Klein*, 770 F. Supp. 2d 1102, 1114 (D. Nev. 2011) (stating that participation in religious services is protected activity for First Amendment retaliation claim).

## IV.    CONCLUSION

The Court will grant the Commonwealth Defendants' Motion to the extent they seek to dismiss Khalil Hammond's RLUIPA claim for injunctive relief and his claim for compensatory damages for his First Amendment free exercise and retaliation claims.  The attached Order will also make clear that the remaining state law claims and First Amendment free exercise claims governed by the Harry Memo and First Amendment retaliation claims arising from the implementation of the Harry Memo are dismissed with prejudice and direct the Commonwealth Defendants to file an answer.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

071526